**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

AMBER SHELTON, as Administratrix of                                    PLAINTIFF
the Estate of Brenda Shelton, Deceased

v.                          No. 4:10CV01519 JLH

ARKANSAS DEPARTMENT OF HUMAN
SERVICES; CHERYL MILLER, individually
and in her official capacity as an employee of
the Arkansas Department of Human Services;
SHARON THOMPSON, individually and in
her official capacity as an employee of the
Arkansas Department of Human Services;
JOHN SCHAY, individually and in his official
capacity as a physician at the University of
Arkansas System; LEVITA FISHER, individually
and in her official capacity as an employee of the
Arkansas State Hospital; ROSALIND HUNTER,
individually; ALBERT KITTRELL; LINDA PARKER;
and CHARLES SMITH, individually and in his official
capacity as Administrator of the Arkansas State Hospital          DEFENDANTS

**OPINION AND ORDER**

       Brenda Shelton attempted to hang herself while a patient at Arkansas State Hospital. She later died as a result of the injuries sustained. Amber Shelton, as Administratrix of the Estate of Brenda Shelton, alleges that the defendants violated Title II of the Americans With Disabilities Act of 1990 and section 504 of the Rehabilitation Act of 1973, as well as Brenda Shelton's rights under the Due Process Clause of the Fourteenth Amendment. She also asserts a claim for medical malpractice under state law. Amber Shelton names as defendants the Arkansas Department of Human Services; Cheryl Miller, individually and in her official capacity as an employee of the Arkansas Department of Human Services; Sharon Thompson, individually and in her official capacity as an employee of the Arkansas Department of Human Services; John Schay, individually

and in his official capacity as a physician at the University of Arkansas System; Levita Fisher, individually and in her official capacity as an employee of the Arkansas State Hospital; Rosalind Hunter, individually; Albert Kittrell; Linda Parker; and Charles Smith, individually and in his official capacity as Administrator of the Arkansas State Hospital. According to the complaint, Parker, Schay, and Kittrell are physicians; Fisher, Miller, and Thompson are nurses; Smith is the hospital administrator; and Hunter is an employee of the University of Arkansas for Medical Sciences. Each of the defendants has filed a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and Shelton has responded. For the following reasons, the Court will dismiss the action with prejudice as to Shelton's claims under federal law and without prejudice as to her state-law claims.

## I.

According to the complaint, Brenda Shelton admitted herself under Dr. Parker's care to the Arkansas State Hospital, where she was immediately placed on suicide watch. Some time later, according to the complaint, Brenda Shelton was removed from suicide watch based on instructions from Dr. Parker. Brenda Shelton attempted to hang herself three days later. The complaint states that the hospital had recently moved to a new part of the facility where resuscitation supplies were kept in a locked room. At the time of the incident, an unidentified nurse had accidentally left the key card used to access the supply room in the room thereby preventing access to resuscitation supplies or equipment during the emergency. The complaint alleges that a hospital policy permitted nurses to withhold rescue breathing in the absence of a "protective device," which apparently is a reference to a device by which resuscitation can be accomplished without mouth-to-mouth or mouth-to-nose contact. The complaint also alleges that the nurses were not adequately trained. The complaint

alleges that Brenda Shelton was found unconscious but could have been resuscitated if the nurses or doctors had administered rescue breathing, which they failed to do. According to the complaint, Brenda Shelton survived several days after the attempted hanging but then died.

The complaint includes three claims for relief. First, the complaint alleges that the defendants "willfully, and intentionally failed to place Ms. Shelton in an environment appropriate to her needs" in violation of the Americans with Disabilities Act, the Rehabilitation Act, and Section 35.130 of Title 28 of the Code of Federal Regulations. Second, the complaint alleges that the defendants deprived Brenda Shelton of her constitutional rights in violation of the Fourteenth Amendment. In her briefs, Amber Shelton indicates that her constitutional claims are also brought pursuant to Section 1983 of Title 42 of the United States Code. Third, the complaint alleges ordinary negligence and medical malpractice against many of the individual defendants. In her complaint, Amber Shelton seeks injunctive and declaratory relief. However, in her briefs, she concedes that she does not have standing to seek this relief. Therefore, the Court dismisses with prejudice her requests for injunctive and declaratory relief.

## II.

In ruling on a Rule 12(b)(6) motion to dismiss, the court "accept[s] as true all of the factual allegations contained in the complaint, and review[s] the complaint to determine whether its allegations show that the pleader is entitled to relief." *Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 549 (8th Cir. 2008). All reasonable inferences from the complaint must be drawn in favor of the nonmoving party. *Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 590 (8th Cir. 2004). A motion to dismiss should not be granted merely because the complaint "does not state with precision all elements that give rise to a legal basis for recovery." *Schmedding v. Tnemec Co., Inc.*,

187 F.3d 862, 864 (8th Cir. 1999). A complaint need only contain "'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563, 127 S. Ct. 1955, 1969, 167 L. Ed. 2d 929 (2007) (overruling language from *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102, 2 L. Ed.2d 80 (1957), which stated, "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief"). Accordingly, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555, 127 S. Ct. at 1964-65 (citations omitted).

### III.

The various defendants have filed separate motions to dismiss in which the arguments and theories differ somewhat, but each motion incorporates arguments from the other motions. The Court concludes that all the motions can be resolved, as a matter of law, on the same bases and therefore will address the motions together.

**A.    THE ADA AND THE REHABILITATION ACT CLAIMS**

Amber Shelton alleges that the defendants' actions violated Title II of the ADA and Section 504 of the Rehabilitation Act. She argues that Eleventh Amendment sovereign immunity does not bar suits against states or state officials when those actions are based on the ADA or Rehabilitation Act. The Eighth Circuit has held that Arkansas has waived its sovereign immunity from suit under

Section 504 of the Rehabilitation Act. *Jim C. v. United States*, 235 F.3d 1079 (8th Cir. 2000). However, the Supreme Court has held that courts must determine whether Title II of the ADA validly abrogated state sovereign immunity on a claim-by-claim basis. *Klingler v. Dir., Dept. of Revenue, State of Mo.*, 455 F.3d 888, 891-92 (8th Cir. 2006) (citing *United States v. Ga.*, 546 U.S. 151, 153-60, 126 S. Ct. 877, 879-82, 163 L. Ed. 2d 650 (2006)). Nevertheless, the Court need not resolve this issue since the ADA and the Rehabilitation Act claims will be dismissed on other grounds.

As a matter of law, a claim based on medical treatment decisions may not be brought pursuant to either the ADA or the Rehabilitation Act. *Burger v. Bloomberg*, 418 F.3d 882, 883 (8th Cir. 2005). To avoid this binding precedent, Amber Shelton argues that the violation alleged in the complaint was not a medical treatment decision but rather a "placement" decision, specifically, a failure to place Brenda Shelton on suicide watch which, Amber Shelton alleges, was the "environment appropriate to her needs." Document #32, p. 2. Amber Shelton provides no authority for the proposition that the decision to place a patient on suicide watch or to remove a patient from suicide watch is not a medical treatment decision. In other contexts, courts have held that decisions by physicians about whether to place mentally ill patients under suicide watch are medical treatment decisions. *See Hott v. Hennepin Cnty., Minn.*, 260 F.3d 901, 905 (8th Cir. 2001) ("We have generally treated allegations that officials failed to prevent jail suicides as claims for failure to provide adequate medical treatment."); *Simmons v. Navajo Cnty., Ariz.*, 609 F.3d 1011, 1019 (9th Cir. 2010) ("We make no determination as to whether Nurse Jones's decision to transfer Jasper from Level I suicide watch to Level II was medically prudent under the circumstances. . . . Although in hindsight, Nurse Jones may not have made the best or even the proper medical decisions[.]"); *Gay*

*v. Hammersley*, No. 08-59, 2009 WL 596114, \*6 (S.D. Ill. Mar. 6, 2009) ("Whether to place a prisoner on suicide watch and what level of precaution to take with an inmate are issues within a professional medical judgment."); *Starks v. Couch*, No. 08CV407, 2009 WL 331357, \*2 (S.D. Ill. Feb. 11, 2009) ("Defendant Rhodes's precautionary measure of placing Starks on suicide watch to prevent him from harming himself was a discretionary function done in good faith as a mental health professional.").

*Burger* applies to the instant case and binds this Court. Amber Shelton's ADA and Rehabilitation Act claims must be dismissed because they are premised on the medical decision to remove Brenda Shelton from suicide watch. A claim for a negligent medical decision is a claim for medical malpractice, which arise under state law, not the ADA or the Rehabilitation Act. *See*, *e.g.*, *Estelle v. Gamble*, 429 U.S. 97, 107, 97 S. Ct. 285, 293, 50 L. Ed. 2d 251 (1976); *Moore v. Kohl*, No. 4:04CV3174, 2005 WL 2002084, \*1 (D. Neb. Aug. 16, 2005) (neglecting to provide necessary medical attention is, at most, medical malpractice).

B.     **CONSTITUTIONAL CLAIMS**

The substance of the constitutional claims is alleged in two paragraphs of the complaint as follows:

> 26.     Ms. Brenda Shelton had a constitutionally protected property right in her life, as well as the right to the pursuit of happiness. However, under the circumstances alleged herein, Ms. Shelton was denied these rights without due process, was subjected to cruel punishment, and Defendants were deliberately indifferent to an obvious and serious medical need. This action is brought under substantive and due process theories.
>
> 27.     In addition to the above, all Defendants were sued in their individual and official capacities for their failure(s) to train, for their ratification of co-Defendants' actions, for the deliberate policy decision not to provide staff with protective devices, and for denying Brenda Shelton equal protection under the law.

Generally, claims for monetary damages against a state or state employees acting in their official capacities are barred by the Eleventh Amendment. *Monroe v. Ark. State Univ.*, 495 F.3d 591, 594 (8th Cir. 2007); *Hopkins v. Saunders*, 93 F.3d 522, 526-27 (8th Cir. 1996). Similarly, a section 1983 claim may not be brought against a state or state employees acting in their official capacities because such defendants are not considered "persons" within the meaning of the statute. *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71, 109 S. Ct. 2304, 2312, 105 L. Ed. 2d 45 (1989); *Mayorga v. Missouri*, 442 F.3d 1128, 1130 n.2 (8th Cir. 2006). Consequently, the claims against the Arkansas Department of Human Services and the State employees in their official capacities must be dismissed.

The defendants argue that, as a matter of law, qualified immunity bars Amber Shelton's due process claims against them in their individual capacities. A government official performing a discretionary function is immune from suit if the facts, taken in a light most favorable to the plaintiff, do not constitute a violation of a constitutional right or if the right allegedly violated was not clearly established at the time of the alleged violation. *Wallingford v. Olson*, 592 F.3d 888, 892 (8th Cir. 2010).

Amber Shelton's constitutional claims are premised on the defendants' failure to keep Brenda Shelton under suicide watch and to intervene after she attempted to commit suicide, though the complaint does not specify which defendants are responsible for which acts of misconduct. "[T]he substantive component of the Fourteenth Amendment's Due Process Clause requires the State to provide involuntarily committed mental patients with such services as are necessary to ensure their 'reasonable safety' from themselves and others." *DeShaney v. Winnebago Cnty. Dept. of Soc. Servs.*, 489 U.S. 189, 194, 109 S. Ct. 998, 1005, 103 L. Ed. 2d 249 (1989) (citing *Youngberg v. Romeo*, 457

U.S. 307, 314-25, 102 S. Ct. 2452, 2457-63, 73 L. Ed. 2d 28 (1982)). A state takes on such an affirmative obligation only when it restrains an individual's liberty to act on his own behalf through "incarceration, institutionalization, or other similar restraint of personal liberty." *Kennedy v. Schafer*, 71 F.3d 292, 294 (8th Cir. 1995) (citing *DeShaney*, 489 U.S. at 200, 109 S. Ct. at 1006). While other circuits "have refused to grant due-process protection to those who voluntarily entered the State's custody," *Kennedy*, 71 F.3d at 294, in *Kennedy* the Eighth Circuit left open the possibility that a voluntarily admitted patient "may have effectively become an involuntary patient" while on protective suicide precautions, so that she may have been in a situation "sufficiently analogous to incarceration or institutionalization to give rise to an affirmative duty to protect." *Id*. at 295 (quoting *DeShaney*, 489 U.S. at 201 n.9, 109 S. Ct. at 1006). The Eighth Circuit held in *Kennedy*, without deciding whether voluntary patients have due process rights, that "an action for damages by a voluntary patient is subject to a qualified-immunity defense." *Id*. at 294. The court said the status of the law made it "impossible for us to say that the law was clearly established at that time in favor of the existence of a due-process right on the part of a voluntarily admitted patient." *Id*.

As noted, the complaint here alleges that Brenda Shelton admitted herself. In her briefs, Amber Shelton argues that, although her mother voluntarily admitted herself, it is unclear whether she was free to leave the hospital and, thus, a fact issue exists as to whether she was voluntarily or involuntarily at the hospital.

In *Kennedy*, the deceased was a minor who had been admitted to a Missouri psychiatric hospital at her parents' request. She was placed on protective suicide precautions. The Missouri statutes in effect at the time provided that voluntary mental patients could be released on request or, if they were minors upon the request of their parents; but the head of the facility could refuse the

release of a minor if the minor presented a serious risk of harm to himself or others. *Id*. at 295. The application for admission in *Kennedy* had included language to the effect that the minor was a threat to herself or others, which created a fact question as to whether, once she was placed on suicide watch, the minor "effectively became an involuntary patient." *Id*.

The Arkansas Code permits a person who has been voluntarily admitted to a hospital for a mental illness to be detained involuntarily provided certain conditions are present and the requisite procedures are followed. *See* Ark. Code Ann. §§ 20-47-204 and 20-47-207. The complaint makes no allegations to the effect that these procedures had been initiated. Brenda Shelton was not a minor, nor was she on suicide watch when the events at issue occurred. So far as the complaint alleges, Brenda Shelton was voluntarily admitted to the Arkansas State Hospital, and she was a voluntary patient at the time that she attempted to hang herself. *See Monahan v. Dorchester Counseling Ctr., Inc*, 961 F.2d 987, 992 (1st Cir. 1992) ("where it was [the plaintiff's] own mental condition alone that impinged upon his freedom to leave, it was not the state that deprived him of that freedom. The state not having restrained [the plaintiff] 'against his will,' the Constitution did not impose upon it any responsibility for his safety and well-being."); *Harper v. Cserr*, 544 F.2d 1121, 1123 (1st Cir. 1976) (noting that due process may be implicated where although "the patients were 'voluntarily' confined in that the state asserted no right to retain them in its custody" nevertheless "they were incapable of voluntary waiver and were, in fact, locked in[,]" but limiting this approach "to those who by reason of disability are to a great degree helpless; and, if not confined de jure, are at least confined de facto."). In *Kennedy*, the Eighth Circuit found no clearly established constitutional right on the part of a voluntarily admitted patient. Nothing in that regard has changed in the interim. The State employees in their individual capacities are entitled to qualified immunity.

9

The Court cannot permit what is actually a claim for medical negligence to proceed under the guise of a due process claim without "violating the Supreme Court's caveat against making 'of the Fourteenth Amendment a font of tort law to be superimposed upon whatever systems may already be administered by the States[.]' " *S.S. v. McMullen*, 225 F.3d 960, 964 (8th Cir. 2000) (quoting *Paul v. Davis*, 424 U.S. 693, 701, 96 S. Ct. 1155, 1160, 47 L. Ed. 2d 405 (1976)). Therefore, Amber Shelton's constitutional claims will be dismissed.

## C. STATE CLAIMS

After dismissing all of Amber Shelton's federal claims, the Court declines to exercise jurisdiction over the state-law claims, so they are dismissed without prejudice. 28 U.S.C. § 1367(c)(3).

## CONCLUSION

The defendants' motions to dismiss are GRANTED. Documents #3, #21, #26, #29, #40, #42, and #44. All of Amber Shelton's claims that arise under the constitution and laws of the United States are dismissed with prejudice. All of Amber Shelton's claims that arise under the laws of the State of Arkansas are dismissed without prejudice.

IT IS SO ORDERED this 29th day of March, 2011.

J. LEON HOLMES
UNITED STATES DISTRICT JUDGE